## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **JANE DOE,**<br>**Washington, D.C.**<br><br>       **Plaintiff,**<br><br>**v.**<br><br>**BOZZUTO MANAGEMENT**<br>**COMPANY**<br>**7850 Walker Drive, Suite 400**<br>**Greenbelt, MD 20770**<br><br>**Serve:  C.T. Corporation System**<br>**1015 15th Street, N.W., Suite 1000**<br>**Washington, D.C. 20005**<br><br>**and**<br><br>**BROADWAY CAPITOL, LLC**<br>**80 Broad St., 29th Floor**<br>**New York, NY  10004**<br><br>**Serve:  Corporation Service Company**<br>**1090 Vermont Avenue, N.W.**<br>**Washington, D.C. 20005**<br><br>       **Defendants.** | **Civil Action No. _____** |

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW Plaintiff Jane Doe ("Plaintiff") and for her Complaint against Defendants

Bozzuto Management Company and Broadway Capitol, LLC, states as follows:

### Nature of Case

This is a civil action for serious bodily and emotional injuries sustained by Plaintiff when

she was violently and horrifically sexually assaulted in her apartment, Unit 705 at Senate Square

Towers, located at 201 I Street NE, Washington, D.C., 20002.  This action is premised upon theories sounding in negligence (premises liability), willful and reckless disregard (premises liability), negligence *per se* (violation of implied warranty of habitability), intentional infliction of emotional distress, common law tort of public nuisance, and declaratory judgment.  These claims arise out of Defendants' failure to maintain the apartment complex known as Senate Square Towers in a reasonable and safe manner.  Defendants' failures include, but are not limited to, negligent and reckless operation and maintenance, both directly and through their employees, servants, and/or agents, of the necessary security systems, devices, and services as were reasonably necessary to protect the safety of the property's tenants.  As a result of the Defendants' negligence, Plaintiff's attacker was able to enter the building and remain inside for hours without being detected, including in the adjacent vacant and unlocked apartment, before violently sexually assaulting Plaintiff.  Plaintiff seeks compensatory and punitive damages.

## Jurisdiction and Venue

1.     Jurisdiction in this matter is founded on diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332(a)(1).

2.     The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

3.     The action for a declaratory judgment is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the Federal Rules of Civil Procedure Rule 57, for the purposes of determining a question of actual controversy between the parties.

4.     Venue in this action properly lies in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391, insofar as a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

5.      This Court has personal jurisdiction over Defendant Bozzuto Management Company ("Bozzuto") pursuant to D.C. Code Ann. § 13-423 in that it transacts business in the District of Columbia; contracts to supply services in the District of Columbia; caused tortious injury in the District of Columbia by acts or omissions in the District of Columbia; and/or has an interest in, uses, or possesses real property in the District of Columbia.

6.      This Court has personal jurisdiction over Defendant Broadway Capitol LLC ("Broadway") pursuant to D.C. Code Ann. § 13-423 in that in that it transacts business in the District of Columbia; contracts to supply services in the District of Columbia; caused tortious injury in the District of Columbia by acts or omissions in the District of Columbia; and/or has an interest in, uses, or possesses real property in the District of Columbia.

## Parties

7.      Plaintiff Jane Doe is now, and at all relevant times has been, an adult citizen resident of Washington, D.C.  At the time of the incident described herein she was 23 years old.

8.      Upon information and belief, Defendant Bozzuto Management Company is a professional corporation organized and existing under the laws of the State of Maryland, with its principle place of business at 7850 Walker Drive, Suite 400, Greenbelt, Maryland, 20770.  At all relevant times, Defendant Bozzuto was engaged in, *inter alia*, the business of managing and/or operating the apartment complex known as Senate Square Towers ("Senate Square") located in Northeast Washington, D.C.  with a main rental office at 201 I Street NE, Washington, D.C., 20002.

9.      Upon information and belief, Defendant Broadway Capitol, LLC, is a limited liability company organized and existing under the laws of the State of Delaware, with its principle place of business at 80 Broad Street, 29th Floor, New York, New York, 10004.  For

3

purposes of diversity jurisdiction, upon information and belief, none of the members of

Broadway are residents of the District of Columbia.  At all relevant times, Defendant Broadway

owned, managed, and/or operated Senate Square.

### Facts

10.     In late September 2009, Plaintiff entered into an agreement to live in Unit 705

(the "Apartment"), a one bedroom plus den, at Senate Square, along with her roommate, a close

female friend.  The Apartment had a market rent of $2,950 per month, which was reduced to

$2,390 including a parking spot when they signed a twelve month lease.  Plaintiff entered into a

Lease Agreement for the Apartment with Defendant Broadway, by and through its agent,

Defendant Buzzuto, on November 11, 2009, for a lease beginning on November 15, 2009 (the

"Lease").

11.     The two roommates were best friends.  They agreed that Plaintiff would make the

den her bedroom.  The den had two solid French doors, and Plaintiff would use the second

bathroom that was across the hall as her primary bathroom.  The den and second bathroom were

near the entrance to the Apartment.

12.     Upon information and belief, Senate Square was a new development, marketing

itself as luxury apartments.

13.     Plaintiff was a recent graduate of American University.  She was smart, social,

and friendly, with a bright future.  She did not drink or party and was a very hard worker.

14.     Plaintiff was a virgin at the time of the incident and was saving herself for

marriage.

15.     Plaintiff worked at the Federal Bureau of Investigation in Winchester, Virginia.

16.     During the relevant time period, Plaintiff would wake up every day early in the morning to leave her apartment by 3:45 a.m. in order to drive to Capitol Heights, Maryland, to catch the van pool at 4:15 a.m. every day to get to her job.

17.     Plaintiff and her roommate had chosen to rent at Senate Square because it was a new building that advertised itself as having modern, luxury, and secure apartments.  The security was important to the two young women living on their own.

18.     Upon information and belief, at all relevant times, the main entrance to Senate Square had a double set of doors that residents could enter by using a key fob.  Senate Square had a guard desk at the front entrance doors to the building.

19.     Upon information and belief, at all relevant times, Senate Square had automated doors at the entrance to the building that opened and closed automatically.  The design of these doors did not allow residents to pull the doors closed behind them.

20.     Upon information and belief, at all relevant times, Senate Square did not have security guards patrolling the building or monitoring the hallways, stairwells, and rooftop.

21.     Upon information and belief, at all relevant times, Senate Square did not have security guards monitoring people entering the building, either at the guard desk or elsewhere.

22.     On the evening of March 24, 2010, Plaintiff and her roommate had a girls' night in, eating and watching videos.  For dessert, they ate a cake Plaintiff had made in honor of her younger sister's birthday.

23.     After dinner, Plaintiff laid out her work clothes in her bathroom, got ready for bed, and went to sleep at around 11:00 p.m.

24.     On March 25, 2010, Plaintiff was woken up by her five alarms at approximately 3:15 a.m.  Plaintiff always set five alarms to make sure she got up in time to leave for work at

3:45 a.m.  Plaintiff went into her bathroom to get ready to leave for work.  While in the bathroom she used the toilet, brushed her teeth, got dressed and did a number of other small tasks.  These activities made normal noises associated with getting ready to go to work.

25.     Unbeknownst to Plaintiff, as she was getting ready to leave for work, an intruder was crouching outside the Apartment listening to the noises she was making through the Apartment wall.  This intruder was Juan Felder ("Felder").

26.     Felder ended up in Senate Square because he had gotten into an argument at home and was then wandering down New York Avenue.  He had walked into several hotels, trying to find an unlocked hotel room where he could spend the night.

27.     When Felder did not have any luck, he continued down New York Avenue and stopped at a store to buy some snacks. He then continued to I Street, Northeast, and came upon Senate Square.

28.     Upon information and belief, at some point Felder entered Senate Square through the main doors by following someone else into the building.

29.     Upon information and belief, Felder was never stopped or asked for identification upon entering the building.

30.     Upon information and belief, no security guard or building employee was positioned to watch him enter or check his identification.

31.     Upon entering the building, Felder took the elevator to the roof and remained there for a number of hours.

32.     Felder then went into one of Senate Square's stairwells and fell asleep.

33.     When he awoke, Felder began walking through the floors of the building, starting with the top floor, jiggling doorknobs and trying to find an open apartment.

34.     When he got to the seventh floor, he found that Unit 708 was both unlocked and vacant (the "Vacant Apartment").

35.     Upon information and belief, the Vacant Apartment was empty and unlocked while Defendants and/or their agents were attempting to find a renter.

36.     The Vacant Apartment is located across from the elevators and across from the Apartment.

37.     Upon information and belief, while hanging out in the Vacant Apartment, Felder heard the noises being made by Plaintiff as she got ready for work and went out into the hallway.

38.     When Plaintiff left the Apartment to go to the elevator on the morning of March 25, 2010, she saw Felder crouched in the hallway by the Apartment wall.

39.     Felder stood up suddenly and said "Hi" to Plaintiff.  Felder then went back into the Vacant Apartment.   According to Felder's confession to police, at this time he decided to rape Plaintiff and went back out into the hallway.

40.     When Felder approached Plaintiff as she waited for the elevator, she became nervous and pretended she forgot something in the Apartment.

41.     Plaintiff turned and walked to her door, unlocked the door, and entered her Apartment.

42.     As she attempted to close the door to the Apartment, Felder rushed towards her and pushed the door open, hitting her in the head and causing her to stumble backwards into the apartment.

43.     Once inside the Apartment, Felder began punching Plaintiff in the head with a closed fist as she screamed.

44.     Felder continued to punch Plaintiff in the head, knocking her to the ground.  He pressed his hand over her mouth so hard she could not breathe.  She managed to scream whenever she could catch her breath.  Felder choked Plaintiff until she could no longer scream, everything became dark for a moment, her lungs were burning, she could no longer breathe, and she thought she was going to die.

45.     Felder the dragged Plaintiff into her bedroom (i.e., the den that had been converted in Plaintiff's bedroom).

46.     Felder brutally and violently raped Plaintiff while she was crying and begging him not to do it.

47.     Plaintiff's roommate was awoken by one of Plaintiff's horrible screams.  She did not initially recognize who was screaming.  She recognized Plaintiff's voice and heard a male voice saying "shut up" and got scared.

48.     Plaintiff's roommate went back into her bedroom and into the bathroom and locked the door.  She called 911.  The bathroom shared a wall with Plaintiff's bedroom and she could her Plaintiff saying: "Please stop, please don't do this, please, please…"

49.     Police finally arrived at the Apartment and started knocking on the front door.

50.     Felder tried to find an exit, but after determining that he could not, he unlocked the front door and surrendered to the police.

51.     When Police entered the Apartment they found Plaintiff battered and bleeding on her bedroom floor wrapped in a blanket.  They found a condom with apparent blood on the outside and semen on the inside.

52.     Plaintiff was bleeding with blood dripping down her thighs.  She told the police detective that she had been a virgin.  She had trauma to her face and head that included significant swelling, bruising, and discoloration to her eyes, face, and cheeks.

53.     There was a wooden dowel, approximately two-feet long, which resembled a handle for a household item, sitting in the middle of her bed that she had never seen, and upon information and belief, had been brought in by Felder.  The Vacant Apartment he had been hiding in contained a number of household items and, upon information and belief, Felder had taken the wooden dowel from the Vacant Apartment.

54.     Plaintiff was interviewed by detectives at the scene and then taken to Washington Hospital Center.

55.     At the hospital a Sexual Assault Nurse Exam was performed.  The nurses observed that Plaintiff's left eye was swollen shut and they were worried she might lose her eye.  They also observed small lacerations on and around her left ear, and swelling, bruising, and small abrasions on her right temple.  She had abrasions and redness on her upper chest and upper arms, as well as redness on her back. The nurses examined Plaintiff's vaginal area and observed a vaginal laceration, along with redness and a cervical abrasion. Plaintiff was given Plan B as well as antibiotics for gonorrhea and chlamydia and Tylenol with codeine for pain. She later received preventive HIV medication. Plaintiff suffered severe side effects from this medication. She was feverish each night and unable to keep any food down.

56.     Plaintiff has suffered extreme psychological injury as a result of the rape.  Her life has been torn apart.  She is constantly in fear of being attacked.  She has suffered and will continue to suffer from fear, anxiety, sadness, depression, and anger. She still struggles with

being in loud places because she is scared no one will hear her scream if something were to happen. She cannot even walk into an elevator without being scared and thinking about death.

57.     Felder was sentenced to 24 years in prison for what the judge called an "extraordinarily brutal and terrible rape even among rapes which are brutal and terrible in any event."

58.     Defendants failed to provide adequate security measures at Senate Square to prevent Felder from entering the building, from walking around the building up to the roof and into the stairwells, from spending time on the roof, from sleeping in the stairwells, and from walking the hallways trying to open every door until he found an open one.

59.     Defendants failed to keep the Vacant Apartment across the hallway from Plaintiff's apartment locked or secured in any way, despite it being vacant.

60.     Upon information and belief, Defendants had an increased awareness of the foreseeability of the attack on Plaintiff as a result of the prior violent crimes against persons and property that occurred in and around Senate Square.

61.     Upon information and belief, there had been previous incidents of non-tenants trespassing at Senate Square prior to March 25, 2010.

62.     Upon information and belief, on March 25, 2010, Defendants failed to provide adequate security as compared to buildings of a similar character and class in order to protect the tenants of Senate Square, including Plaintiff.

## COUNT I
### (Negligence/Premises Liability)

63.     Paragraphs 1- 62 are hereby incorporated by reference as if fully set forth herein.

64.     At all times relevant herein, Defendants owned and/or operated and/or managed Senate Square.

65.     The aforesaid incident was caused by and was the direct, sole, and proximate result of Defendants' negligent breach of their duty to the tenants of Senate Square, including Plaintiff.

66.     Defendants as the owners, operators, and/or managers of Senate Square, owed Plaintiff the duty to maintain the premises in a reasonable and safe manner or condition; to take reasonable measures to protect the tenants of the property from the criminal acts of third parties; to protect the safety of their tenants and other lawful users of the property; and to maintain the property and security system in a safe and functional condition for the use of tenants and other lawful users of the property.

67.     Notwithstanding said duties, Defendants, both directly and vicariously through their employees, servants, and/or agents, negligently failed to maintain the premises in a reasonable and safe manner or condition; failed to take reasonable measures to protect the tenants of the property from the criminal acts of third parties; failed to protect the safety of their tenants and other lawful users of the property; and failed to maintain the property and security system in a safe and functional condition for the use of tenants and other lawful users of the property.

68.     Defendants' failures, both directly and through their employees, servants and/or agents, include but are not limited to: failure to devise, adopt, and implement a reasonable security plan for the property; failure to perform or obtain a proper security assessment of the complex and surrounding neighborhood; failure to install, maintain, repair, and/or replace adequate security equipment for the property; failure to install adequate entry doors and monitor

individuals entering or exiting through those doors; failure to provide and maintain adequate security personnel to monitor and patrol the property; failure to warn the tenants and guests of ongoing violent criminal acts committed against tenants of the property; failure to take reasonable security measures to protect tenants of the property after previous incidents of non-tenants accessing the property; failure to keep the door locked on all vacant units; and failure to instruct tenants in means and methods of preventing and deterring criminal acts against themselves and fellow tenants.

69.     Defendants breached their duties to Plaintiff.

70.     Defendants had an increased awareness of the foreseeability of the attack on Plaintiff as a result of the prior violent crimes against persons and property that occurred in and around Senate Square and/or previous incidents of non-tenants accessing the property.

71.     The violent attack against Plaintiff was reasonably foreseeable.

72.     Plaintiff's injuries are a direct and proximate result of the aforesaid negligent acts and/or omissions of Defendants.

73.     Plaintiff acted properly in all respects and was free from negligence in connection with this incident.

74.     As a direct and proximate result of the negligence by Defendants and/or Defendants' employees and/or agents, and through no fault of her own, Plaintiff: experienced and will continue to experience pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

75.     As a further direct and proximate result of the negligence by Defendants and/or

Defendants' employees and/or agents, Plaintiff suffered past and future lost income, lost

earnings, and loss of earning capacity.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as

follows: (1) compensatory damages in the amount of $5,000,000.00, which amount will be

proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as

permitted by law; and (4) such other and further relief as this Court deems proper.

## COUNT II
### (Reckless and Willful Disregard/Premises Liability)

76.     Paragraphs 1- 75 are hereby incorporated by reference as if fully set forth herein.

77.     At all times relevant herein, Defendants owned, operated and/or managed Senate

Square.

78.     The aforesaid incident was caused by and was the direct, sole, and proximate

result of Defendants' reckless and willful disregard of their duty to the tenants of Senate Square,

including Plaintiff.

79.     Defendants as the owners, operators, and/or managers of Senate Square, owed

Plaintiff the duty to maintain the premises in a reasonable and safe manner or condition; to take

reasonable measures to protect the tenants of the property from the criminal acts of third parties;

to protect the safety of their tenants and other lawful users of the property; and to maintain the

property and security system in a safe and functional condition for the use of tenants and other

lawful users of the property.

80.     Notwithstanding said duties, Defendants, both directly and vicariously through

their employees, servants, and/or agents, recklessly and with willful disregard to the rights and

safety of Plaintiff, failed to maintain the premises in a reasonable and safe manner or condition;

failed to take reasonable measures to protect the tenants of the property from the criminal acts of

third parties; failed to protect the safety of their tenants and other lawful users of the property;

and failed to maintain the property and security system in a safe and functional condition for the

use of tenants and other lawful users of the property.

81.    Defendants' failures, both directly and through their employees, servants and/or

agents, include but are not limited to: failure to devise, adopt, and implement a reasonable

security plan for the property; failure to perform or obtain a proper security assessment of the

complex and surrounding neighborhood; failure to install, maintain, repair, and/or replace

adequate security equipment for the property; failure to install adequate entry doors and monitor

individuals entering or exiting through those doors; failure to provide and maintain adequate

security personnel to monitor and patrol the property; failure to warn the tenants and guests of

ongoing violent criminal acts committed against tenants of the property; failure to take

reasonable security measures to protect tenants of the property after previous incidents of non-

tenants accessing the property; failure to keep the door locked on all vacant units; and failure to

instruct tenants in means and methods of preventing and deterring criminal acts against

themselves and fellow tenants.

82.    Defendants breached their duties to Plaintiff.

83.    As a direct and proximate result of the aforesaid breaches, Plaintiff was violently

raped in her Apartment on March 25, 2010.

84.    Defendants had an increased awareness of the foreseeability of the attack on

Plaintiff as a result of the prior violent crimes against persons and property that occurred in and

around Senate Square and/or previous incidents of non-tenants accessing the property.

85.     Defendants' disregard of the danger to tenants, including Plaintiff, was reckless in light of the frequency and severity of violent crimes on the property and/or in the vicinity of Senate Square.

86.     The violent attack against Plaintiff was reasonably foreseeable.

87.     Plaintiff's injuries are a direct and proximate result of Defendants' aforesaid reckless acts and/or omissions or willful disregard of Plaintiff's rights and safety.

88.     Plaintiff acted properly in all respects and was free from negligence in connection with this incident.

89.     As a direct and proximate result of Defendants and/or Defendants' employees and/or agents, reckless and willful disregard of Plaintiff's rights and safety, Plaintiff: experienced and will continue to experience pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

90.     As a further direct and proximate result of reckless and will disregard of Plaintiff's rights and safety by Defendants and/or Defendants' employees and/or agents, Plaintiff suffered past and future lost income, lost earnings, and loss of earning capacity.

91.     Because Defendants' conduct reflects reckless and willful disregard for Plaintiff's rights and safety, Defendants are liable for punitive damages in an amount of $10,000,000.00.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows: (1) compensatory damages in the amount of $5,000,000.00, which amount will be proven at trial; (2) punitive damages in the amount of $10,000,000.00; (3) all costs associated

with this action; (4) pre- and post-judgment interest as permitted by law; and (5) such other and further relief as this Court deems proper.

## COUNT III
### (Violation of Warranty of Habitability)

92.     Paragraphs 1 – 91 above are hereby incorporated by reference as if set forth fully herein.

93.     At all times relevant herein, Defendants owned and/or operated and/or managed Senate Square.

94.     Plaintiff entered into a lease agreement for the rental of the Apartment at Senate Square, on or about September 20, 2009.

95.     In the District of Columbia, residential leases contain an implied and/or a statutory warranty of habitability, see e.g., D.C. MUN. REGS. Tit. 14 § 301 (2011).

96.     In the District of Columbia, landlords such as Defendants are required to maintain all premises occupied for residential purposes in a safe condition.

97.     Defendants breached their warranty of habitability by failing to exercise reasonable care to implement, and/or properly operate, and/or maintain adequate security measures to protect tenants of Senate Square, including Plaintiff, from conditions that could cause them harm, including the violent acts of third parties.

98.     Defendants' failures, both directly and through their employees, servants and/or agents, include but are not limited to: failure to devise, adopt, and implement a reasonable security plan for the property; failure to perform or obtain a proper security assessment of the complex and surrounding neighborhood; failure to install, maintain, repair, and/or replace adequate security equipment for the property; failure to install adequate entry doors and monitor individuals entering or exiting through those doors; failure to provide and maintain adequate

security personnel to monitor and patrol the property; failure to warn the tenants and guests of ongoing violent criminal acts committed against tenants of the property; failure to take reasonable security measures to protect tenants of the property after previous incidents of non-tenants accessing the property; failure to keep the door locked on all vacant units; and failure to instruct tenants in means and methods of preventing and deterring criminal acts against themselves and fellow tenants.

99.     Defendants had actual knowledge of the danger to tenants, including Plaintiff, due to the numerous violent crimes occurring on or near the property and/or previous incidents of non-tenants accessing the property.

100.     Defendants' disregard of the danger to tenants, including Plaintiff, was reckless in light of the frequency and severity of violent crimes on the property and/or in the vicinity of Senate Square.

101.     As a direct and proximate result of the aforesaid breach of Defendants' warranty of habitability, Plaintiff was violently raped in her Apartment on March 25, 2010.

102.     As a direct and proximate result of Defendants and/or Defendants' employees and/or agents, reckless and willful disregard of Plaintiff's rights and safety, Plaintiff: experienced and will continue to experience pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

103.    As a further direct and proximate result of reckless and will disregard of Plaintiff's rights and safety by Defendants and/or Defendants' employees and/or agents, Plaintiff suffered past and future lost income, lost earnings, and loss of earning capacity.

104.    Because Defendants' conduct reflects reckless and willful disregard for Plaintiff's rights and safety, Defendants' are liable for punitive damages in an amount of $10,000,000.00.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows: (1) compensatory damages in the amount of $5,000,000.00, which amount will be proven at trial; (2) punitive damages in the amount of $10,000,000.00; (3) all costs associated with this action; (4) pre- and post-judgment interest as permitted by law; and (5) such other and further relief as this Court deems proper.

## COUNT IV
### (Negligence Per Se)

105.    Paragraphs 1 – 104 above are hereby incorporated by reference as if set forth fully herein.

106.    At all times relevant herein, Defendants owned and/or operated and/or managed Senate Square.

107.    In the District of Columbia, D.C. MUN. REGS. Tit. 14 § 301 and D.C. MUN. REGS. Tit. 14 § 800, requires landlords such as Defendants to maintain all premises occupied for residential purposes in a safe condition.

108.    At the time of the Plaintiff's sexual assault, D.C. MUN. REGS. Tit. 14 § 301 and D.C. MUN. REGS. Tit. 14 § 800 were in effect.

109.    Plaintiff was at all relevant times a member of the class and/or classes intended to be protected by D.C. MUN. REGS. Tit. 14 § 301 and/or D.C. MUN. REGS. Tit. 14 § 800.

110.   Defendants failed to maintain Senate Square in a safe condition by failing to exercise reasonable care to implement, and/or properly operate, and/or maintain adequate security measures to protect tenants of Senate Square, including Plaintiff, from conditions that could cause them harm, including the violent acts of third parties.

111.   Defendants' failures, both directly and through their employees, servants and/or agents, include but are not limited to: failure to devise, adopt, and implement a reasonable security plan for the property; failure to perform or obtain a proper security assessment of the complex and surrounding neighborhood; failure to install, maintain, repair, and/or replace adequate security equipment for the property; failure to install adequate entry doors and monitor individuals entering or exiting through those doors; failure to provide and maintain adequate security personnel to monitor and patrol the property; failure to warn the tenants and guests of ongoing violent criminal acts committed against tenants of the property; failure to take reasonable security measures to protect tenants of the property after previous incidents of non-tenants accessing the property; failure to keep the door locked on all vacant units; and failure to instruct tenants in means and methods of preventing and deterring criminal acts against themselves and fellow tenants.

112.   Defendants had actual knowledge of the danger to tenants, including Plaintiff, due to the numerous violent crimes occurring on or near the property and/or previous incidents of non-tenants accessing the property.

113.   Defendants' disregard of the danger to tenants, including Plaintiff, was reckless in light of the frequency and severity of violent crimes on the property and/or in the vicinity of Senate Square.

114.    Defendant violated D.C. MUN. REGS. Tit. 14 § 301 and D.C. MUN. REGS. Tit. 14 § 800 by failing to maintain Senate Square in a safe condition.

115.    By violating D.C. MUN. REGS. Tit. 14 § 301 and/or D.C. MUN. REGS. Tit. 14 § 800, Defendants are liable for all of the damages Plaintiff suffered as a result of those violations.

116.    As a direct and proximate result of the aforesaid failures by Defendants, Plaintiff was violently raped in her Apartment on March 25, 2010.

117.    As a direct and proximate result of Defendants and/or Defendants' employees and/or agents, reckless and willful disregard of Plaintiff's rights and safety, Plaintiff: experienced and will continue to experience pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

118.    As a further direct and proximate result of reckless and will disregard of Plaintiff's rights and safety by Defendants and/or Defendants' employees and/or agents, Plaintiff suffered past and future lost income, lost earnings, and loss of earning capacity.

119.    Plaintiff's physical and emotional injuries are a direct result of Defendants' failure to comply with D.C. MUN. REGS. Tit. 14 § 301 and/or D.C. MUN. REGS. Tit. 14 § 800. Moreover, the harms Plaintiff suffered directly result from the risks that the statute was designed to protect against.

120.    Because Defendants' conduct reflects reckless and willful disregard for Plaintiff's rights and safety, Defendants' are liable for punitive damages in an amount of $10,000,000.00.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows: (1) compensatory damages in the amount of $5,000,000.00, which amount will be proven at trial; (2) punitive damages in the amount of $10,000,000.00; (3) all costs associated with this action; (4) pre- and post-judgment interest as permitted by law; and (5) such other and further relief as this Court deems proper.

## COUNT V
### (Intentional Infliction of Emotional Distress)

121.    Paragraphs 1 – 120 above are hereby incorporated by reference as if set forth fully herein.

122.    Defendants, as owners, managers and/or operators of Senate Square, were responsible for addressing and preventing such criminal conduct on the property through the operation and maintenance of adequate security measures.

123.    Defendants allowed, condoned and through reckless acts and/or omissions permitted such criminal activity upon their premises by failing to maintain the premises in a reasonable and safe manner; failing to take reasonable measures to protect the tenants of the property from the criminal acts of third parties; failing to protect the safety of their tenants and other lawful users of the property; and failing to maintain the property and security system in a safe and operating condition for the use of tenants and other lawful users of the property.

124.    Defendants' reckless acts and/or omissions, both directly and through their employees, servants and/or agents, include but are not limited to: failure to devise, adopt, and implement a reasonable security plan for the property; failure to perform or obtain a proper security assessment of the complex and surrounding neighborhood; failure to install, maintain, repair, and/or replace adequate security equipment for the property; failure to install adequate entry doors and monitor individuals entering or exiting through those doors; failure to provide

and maintain adequate security personnel to monitor and patrol the property; failure to warn the tenants and guests of ongoing violent criminal acts committed against tenants of the property; failure to take reasonable security measures to protect tenants of the property after previous incidents of non-tenants accessing the property; failure to keep the door locked on all vacant units; and failure to instruct tenants in means and methods of preventing and deterring criminal acts against themselves and fellow tenants.

125.   Defendants' failure to implement adequate security measures, despite their knowledge of previous violent crimes occurring on the property of and/or in the area adjacent to Senate Square, amounts to extreme, outrageous, and reckless conduct.

126.   As a direct and proximate result Defendants and/or Defendants' employees and/or agents, reckless and willful disregard of Plaintiff's rights and safety, Plaintiff: experienced and will continue to experience pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

127.   As a further direct and proximate result of reckless and will disregard of Plaintiff's rights and safety by Defendants and/or Defendants' employees and/or agents, Plaintiff suffered past and future lost income, lost earnings, and loss of earning capacity.

128.   Because Defendants' conduct reflects reckless and willful disregard for Plaintiff's rights and safety, Defendants are liable for punitive damages in an amount of $10,000,000.00.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows: (1) compensatory damages in the amount of not less than $5,000,000.00, which amount

will be proven at trial; (2) punitive damages in the amount of not less than $10,000,000.00; (3)

all costs associated with this action; (4) pre- and post-judgment interest as permitted by law; and

(5) such other and further relief as this Court deems proper.

## COUNT VI
### (Common Law Tort of Public Nuisance)

129.   Paragraphs 1 – 128 above are hereby incorporated by reference as if set forth fully

herein.

130.   Defendants unreasonably interfered with a right common to the general public

and thereby caused Plaintiff to suffer damages distinct from that common to the public.

131.   Defendants owed the public generally, and Plaintiff specifically, a common law

duty to prevent injury arising from abnormal and out of place events and/or events that would not

ordinarily have occurred in the exercise of due care in regard to property under their control.

132.   Defendants further owed the public generally, and Plaintiff specifically, statutory

duties regarding the property controlled and/or managed by them.  Those duties arose from, inter

alia, D.C. MUN. REGS. Tit. 14 § 800 (2010), requiring Defendants to maintain their property in a

safe condition.

133.   The aforementioned statute promotes public safety, and was enacted to protect

persons in Plaintiff's position, and to prevent the type of incident described above.  Such statute

therefore set forth duties with which Defendants were required to comply.

134.   Defendants breached their duties, both directly and through their employees,

servants and/or agents, as follows: failure to devise, adopt, and implement a reasonable security

plan for the property; failure to perform or obtain a proper security assessment of the complex

and surrounding neighborhood; failure to install, maintain, repair, and/or replace adequate

security equipment for the property; failure to install adequate entry doors and monitor individuals entering or exiting through those doors; failure to provide and maintain adequate security personnel to monitor and patrol the property; failure to warn the tenants and guests of ongoing violent criminal acts committed against tenants of the property; failure to take reasonable security measures to protect tenants of the property after previous incidents of non-tenants accessing the property; failure to keep the door locked on all vacant units; and failure to instruct tenants in means and methods of preventing and deterring criminal acts against themselves and fellow tenants.

135.    Defendants breached their duties and under, inter alia, D.C. MUN. REGS. Tit. 14 § 800.09 (2010) committed a public nuisance.

136.    As evidenced by Defendants' conduct proscribed by statute and by failing to prevent injury arising from abnormal and out of place events and/or events that would not ordinarily have occurred in the exercise of due care in regard to property under their control, Defendants unreasonably interfered with a public right and acted in an outrageous and reckless manner and with such indifference to the consequences as to evince a willful disregard for the rights of Plaintiff.

137.    As a direct and proximate result of Defendants and/or Defendants' employees and/or agents, reckless and willful disregard of Plaintiff's rights and safety, Plaintiff experienced, and will continue to experience pain and suffering, physical injuries, and severe emotional distress; was prevented from pursuing her usual routine activities; suffered humiliation and embarrassment; and was caused economic damages including, but not limited to, expenses for hospital care, additional medical care, and counseling, as well as expenses for future medical care, and counseling.

138.    As a further direct and proximate result of reckless and will disregard of
Plaintiff's rights and safety by Defendants and/or Defendants' employees and/or agents, Plaintiff
suffered past and future lost income, lost earnings, and loss of earning capacity.

139.    Because Defendants' conduct reflects reckless and willful disregard for Plaintiff's
rights and safety, Defendants are liable for punitive damages in an amount of $10,000,000.00.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as
follows: (1) compensatory damages in the amount of $5,000,000.00, which amount will be
proven at trial; (2) punitive damages in the amount of $10,000,000.00; (3) all costs associated
with this action; (4) pre- and post-judgment interest as permitted by law; and (5) such other and
further relief as this Court deems proper.

### COUNT VII
### (Declaratory Relief)

140.    Paragraphs 1 – 139 above are hereby incorporated by reference as if set forth fully
herein.

141.    The Lease contains an Addendum To Lease Agreement Security Policy,
Acknowledgment And Release ("Security Addendum"), that states, in part: "Owner does not
promise, warrant, or guarantee the safety or security of residents … against the criminal actions
of other residents or third parties."  The Security Addendum further purported to have Plaintiff,
*inter alia*, "RELEASE, INDEMNIFY AND HOLD OWNER HARMLESS FROM LOSSES,
CLAIMS, AND COSTS (INCLUDING REASONABLE ATTORNEY'S FEES) WITH
RESPECT TO ANY PERSONAL INJURY, PROPERTY DAMAGE, OR DEATH ARISING
OUT OF CRIMINAL ACTS OF OTHER RESIDENTS AND THIRD PARTIES …"

142.    The Lease contains a Liability clause at Section 7, page 3, that states, in part:
"Lessor shall not be liable for any damage to or injury to the Lessee … arising from any cause

other than Lessor's negligent acts or omissions to act …" It continues, "Lessor will not be liable to Lessee … for any damages or losses to person or property caused by other persons, including theft, burglary, assault, vandalism, or other crimes."

143.    Plaintiff is now bringing claims against Defendants Broadway and Bozzuto for personal injury claims arising out of the criminal acts of third parties, as discussed herein.

144.    An actual and justiciable controversy has arisen and now exists relating to the parties' rights, duties, and obligations under the Lease.

145.    District of Columbia Municipal Regulation 13-304.1 provides: "Any provision of any lease or agreement contrary to, or providing for a waiver of, the terms of this chapter … shall be void and unenforceable." D.C.M.R. § 13-304.1 (2009)

146.    District of Columbia Municipal Regulation 13-304.3 provides: "No owner shall cause to be placed in a lease or rental agreement any provision exempting the owner or premises from liability or limiting the liability of the owner or the residential premises from damages for injuries to persons or property caused by or resulting from the negligence of the owner (or the owner's agents, servants, or employees) in the operation, care, or maintenance of the leased premises, or any facility upon or portion of the property of which the leased premises are a part." D.C.M.R. § 13-304.3 (2009).

147.    District of Columbia Municipal Regulation 13-304.3 provides: "No owner shall place (or cause to be placed) in a lease or rental agreement a provision waiving the right of a tenant of residential premises to a jury trial, or *requiring that the tenant pay the owner's court costs or legal fees* …" D.C.M.R. § 13-304.4 (2009) (emphases added).

148.    D.C.M.R. 13-304 was effective on the date of the Lease.

149.   Based on the regulations contained in D.C.M.R. 13-304, the Security Addendum to the Lease and the Lease's Section 7, Liability, or relevant parts therein, are void, unenforceable and of no legal effect.

150.   By reason of the foregoing, Plaintiff is entitled to a judgment declaring that the Addendum To Lease Agreement, Security Policy, Acknowledgment And Release, entered into between Plaintiff and Defendants on November 11, 2009, effective November 15, 2009, is void and unenforceable and may not be used as a defense in this action.

151.   By reason of the foregoing, , Plaintiff is entitled to a judgment declaring that the Lease Section 7, Liability, entered into between Plaintiff and Defendants on November 11, 2009, effective November 15, 2009, is void and unenforceable and may not be used as a defense in this action.

WHEREFORE, Plaintiff prays as follows:

a.      That this Court determine and adjudicate the enforceability of the Addendum To Lease Agreement, Security Policy, Acknowledgment And Release, entered into between Plaintiff and Defendants on November 11, 2009, effective November 15, 2009;

b.      That this Court determine and adjudicate the enforceability of the Lease Section 7, Liability, entered into between Plaintiff and Defendants on November 11, 2009, effective November 15, 2009;

c.      That this Court find and declare that the Addendum To Lease Agreement, Security Policy, Acknowledgment And Release, entered into between Plaintiff and Defendants on November 11, 2009, effective November 15, 2009, is void, unenforceable, and of no legal effect;

d.   That this Court find and declare that the Lease Section 7, Liability, entered into

between Plaintiff and Defendants on November 11, 2009, effective November 15,

2009, is void, unenforceable, and of no legal effect;

e.   That this Court award Plaintiff her costs of this proceeding;

f.   That this Court award Plaintiff all other necessary and proper relief to which she

may be entitled.

### Prayer For Relief

Plaintiff, by counsel, respectfully requests a trial by jury to the maximum extent

permitted by law.

Respectfully submitted,

JANE DOE

By: _____

Peter C. Grenier, Esquire (DC Bar # 418570)
BODE & GRENIER, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C. 20036
(202) 828-4100 (telephone)
(202) 828-4130 (facsimile)
*Counsel for Plaintiff*

By: _____

Jacob M. Lebowitz, Esquire (DC Bar # 483742)
BODE & GRENIER, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C. 20036
(202) 828-4100 (telephone)
(202) 828-4130 (facsimile)
*Counsel for Plaintiff*

By: _____
Ryan C. Posey, Esquire (DC Bar # 1000581)
BODE & GRENIER, L.L.P.
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C. 20036
(202) 828-4100 (telephone)
(202) 828-4130 (facsimile)
*Counsel for Plaintiff*

Dated:  December 5, 2011